UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **VICTOR CULLORS** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **vs.** | § | **Civil Case No.** _____ |
| | § | |
| **NORTH TEXAS FOOD BANK** | § | |
| | § | |
| | § | |
| **Defendant** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT
### (Jury Demand)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Victor Cullors, Plaintiff, complaining of North Texas Food Bank, Defendant, and for cause of action, Plaintiff would show the Court the following:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to pursuant to 28 U.S.C. §1331 because this case involves a federal question.  Venue in this Court is proper pursuant to 28 U.S.C. §1391(b)(1) because Defendant Foxworth-Galbraith Lumbar Company is headquartered in the Eastern District of Texas, Sherman Division.

### THE PARTIES

*Plaintiff*

2.      Plaintiff Victor Cullors is a Tarrant County, Texas resident.

*Defendant*

PLAINTIFF'S ORIGINAL COMPLAINT                                                                                    Page 1

3.      Defendant North Texas Food Bank is a corporation duly authorized to do business in the State of Texas. It is headquartered in Plano, Texas.  It may be served with process through its registered agent Trisha Cunningham, 3677 Mapleshade Lane, Plano, Texas 75075, or wherever she may be found.

## FACTS

4.      Following is a summary of the harassment Mr. Cullors endured during his employment with Defendant. Plaintiff is currently employed with Defendant as a driver. Plaintiff has worked for Defendant for over 15 years. During the relevant time period of this lawsuit, Plaintiff had two employees (one was a Senior Logistics Manager and the other was the Transportation Manager) above him while working for Defendant who took the actions that form the basis of his claims. These were Mike Lawler and Terrence Coleman.

5.      Plaintiff has been subjected to a racially hostile work environment because of Mr. Lawler for years and still suffers from the effects today even though Mr. Lawler no longer works there. Mr. Lawler's actions, and Defendant's lack of action, created a racially discriminatory environment that constituted a continuing violation of Plaintiff's rights under Title VII of the Civil Rights Act and 42 U.S.C. § 1981.

6.      In November of 2020, Mr. Lawler and another driver for Defendant, Michael Green, were walking around the facility where Plaintiff worked. Mr. Lawler saw Plaintiff and another employee, Carlos Ambriz, turned to Mr. Green, and called Plaintiff and Mr. Ambriz "two yard apes." Mr. Green was deeply offended by the comment and went to report it to Mr. Lawler's boss, Joe Crawford. Plaintiff was informed of this comment after it was reported. Plaintiff hoped that Defendant would investigate the incident promptly and take remedial action. However, this was not the case. This created a work environment where Plaintiff understood that racial

discrimination would not be punished and that reporting the discrimination would not lead to anything.

7.    Plaintiff continued to suffer at the hands of Mr. Lawler because of his race and in retaliation for complaining of the treatment he and other drivers were subjected to. Plaintiff would be the one to speak up against Mr. Lawler, and he would retaliate against him in return. Even though Plaintiff would raise his concerns to Mr. Lawler, Defendant did not take correct remedial action to solve any of the problems. In fact, Mr. Lawler was allowed to continue his campaign of racial discrimination with no repercussions. This led to Mr. Lawler believing he could act with impunity. Subsequently, he terminated three African American drivers because of an alleged "theft." No such theft occurred, and all three filed charges of discrimination against Defendant.

8.    The situation with the terminated drivers further impacted Plaintiff as he was shown that the discrimination with Defendant was rampant and there would be no consequences for those perpetrating it. Plaintiff decided to stop speaking up after this incident because he was afraid to be terminated like the other drivers. After these drivers were terminated, Plaintiff was brought in to speak with an attorney for Defendant and Suzanne, the head of Human Resources. Plaintiff was asked about the situation, gave his input, and then spoke to Suzanne about the "yard ape" comment he had experienced earlier. Plaintiff again felt like Defendant would now take appropriate action against Mr. Lawler. But, just as before, this was not the case. Mr. Lawler remained employed, and he could continue acting without fear of reprisal from Defendant.

9.    Mr. Lawler's conduct of discrimination was so severe against Plaintiff and other employees, that Brad Stewart, the Chief Operating Officer for Defendant, hired a psychiatrist to speak with members of the Logistics Department in attempt to calm the employees down. This

psychiatrist came out on three separate occasions, but no remedial action was taken against Mr. Lawler and the discrimination and retaliation continued.

10.     Around this time, Defendant hired Mr. Coleman to be the Transportation Manager and became Plaintiff's direct reporting supervisor. Mr. Coleman is African American, and Defendant took this action to keep him silenced about the discrimination of Mr. Lawler. Although Mr. Coleman was now Plaintiff's direct supervisor, Mr. Lawler retained his position above both of them and continued to wield the power dynamic he had before. Mr. Lawler was allowed to continue his racial discrimination over the minority groups employed by Defendant. Further, Mr. Lawler was allowed to continue treating the white employees of Defendant more favorably than the minority employees. White drivers were allowed to be insubordinate and do actions without the repercussions that were levied against the African American employees.

11.     Mr. Lawler also continued to retaliate against Plaintiff for the complaints he had made in the past, including base-less write-ups. One such write-up was for Plaintiff not completing required training; however, Plaintiff had completed the training in a timely manner.

12.     The racially hostile environment and the retaliation Plaintiff suffered for complaining about it had a deep and lasting impact on Plaintiff's health. Because of the treatment he endured and the lack of appropriate action by Defendant, Plaintiff began to suffer mental health episodes referred to as "meltdowns." Plaintiff would become extremely emotional, have crying spells, and suffer depression. This caused insomnia in him as well. These meltdowns were concentrated in the morning when he would be getting ready for work as Plaintiff did not know what discrimination or retaliation he would face in the upcoming day.

13.     Plaintiff was forced into needing treatment for his mental health because of Defendant. Plaintiff still suffers to this day and is receiving treatment. Plaintiff has been diagnosed

with Post Traumatic Stress Disorder, depression, anxiety, and sleep insomnia. All these afflictions were in direct result of the conduct Plaintiff has been subjected to by Defendant. These are his disabilities, and they have severely impacted Plaintiff's life and substantially limits his major life activities, such as working or caring for himself. These disabilities continued to get worse, and everything came to a head in late February 2022 when there was a "Driver Cam Dispute." Plaintiff was leaving work, and Mr. Lawler approached him in the parking lot. Words were exchanged and caused an explosion of anger because of everything that had been built up.

14.    Plaintiff had suffered as much abuse as he could take with Defendant, and informed Defendant on February 24, 2022, that he needed to stay away from Mr. Lawler to preserve what peace of mind he had left. This was Plaintiff's qualifying event, and subsequently he applied for and was approved for 12 weeks of FMLA leave on February 25, 2022. This leave was set to expire on May 19, 2022. On May 6, 2022, Plaintiff emailed Adrienne Robinson, the People and Culture Manager for Defendant, and requested extending his return-to-work date to June 27, 2022. This extension was because of his continuing disabilities. Ms. Robinson told Plaintiff that his FMLA leave would not be extended past the 12 weeks, that he could apply for a discretionary leave of absence, and that he would be terminated if he did not return to work once his FMLA leave had expired if the temporary leave of absence was not approved.

15.    On May 13, 2022, Plaintiff's therapist sent an email to Defendant requesting that his request be approved for more leave. On May 17, 2022, Ms. Robinson again informed Plaintiff that Defendant would not be extending his FMLA leave, that his return-to-work date would be May 23, 2022, and she then threatened termination if he would not return although his therapist had asked for this accommodation. Plaintiff's discretionary leave was not approved at this time and Defendant was adamant that Plaintiff return to work.

16.     On May 20, 2022, Plaintiff left Ms. Robinson a voicemail stating he was not returning to work on May 23, 2022, and informed her that he had filed his charge of discrimination against Defendant. Only after this voicemail did Defendant approve Plaintiff's unpaid leave of absence on May 25, 2022. This leave would not protect Plaintiff's job or guarantee that he would return to work in the same position. Plaintiff reached out on June 17, 2022, to inquire how to apply for job accommodations where he was provided with a Request for Reasonable Accommodation form. Plaintiff took this form and requested reasonable accommodations in the form of more leave because of the severity of his disabilities and the effect they had on Plaintiff's major life activities. Plaintiff requested more leave and his therapist again emailed Defendant asking for approval on this extension.

17.     Plaintiff had applied for short-term disability when he first began his FMLA leave. On June 23, 2022, Plaintiff informed Ms. Robinson that he had only received one payment for this short-term disability and asked how to apply for worker's compensation. Plaintiff filed his worker's compensation claim, and put forth his disabilities as PTSD, anxiety, insomnia, and depression. Because Plaintiff did not receive his short-term disability payments and was denied worker's compensation, he was forced to return to work on July 11. 2022.

18.     Plaintiff suffered racial discrimination because of Defendant's conduct. Defendant did not act promptly to complaints of racial discrimination and took no remedial action against Mr. Lawler allowing the racially hostile environment to continue. Further, Plaintiff was retaliated against by Mr. Lawler for the complaints he made. Because of this toxic environment, Plaintiff began to suffer extreme mental health problems causing him to become disabled with PTSD, anxiety, insomnia, and depression. These disabilities became so severe, that Plaintiff had to take medical leave. Even after being informed by Plaintiff's therapist that he would need to be off

longer than May 23, 2022, Defendant still threatened Plaintiff with termination if he did not return. Defendant only approved his leave after Plaintiff filed his charge of discrimination against it.

19.    Plaintiff was discriminated because of his race and retaliated against for making complaints of the discrimination in violation of Title VII of the Civil Rights Act and § 1981. Plaintiff was also discriminated against through a failure to accommodate him and retaliated against because of his disabilities in violation of the Americans with Disabilities Act.

## CAUSES OF ACTION

### A.    Discrimination under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981

20.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

21.    As set forth above, Plaintiff was discriminated against because of his race. Defendants also created a racially hostile work environment.

22.    Defendant violated Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

23.    Defendant's violations of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 has directly and approximately caused damage to Plaintiff, for which he hereby sues Defendant.

### B.    Retaliation under Title VII of the Civil Rights Act of 1964, as amended and in violation of 42 U.S.C. § 1981

24.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

25.    As set forth above, Plaintiff has been retaliated against by Defendant for reporting discriminatory actions.  Defendant's warrantless write-ups for his performance and the treatment endured by Plaintiff for making his complaints were retaliation.

26.    Defendant has violated Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 1981.

27.    Defendant's violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 has directly and approximately caused damage to Plaintiff, for which he hereby sues Defendant.

**C.    Discrimination and Retaliation under the Americans with Disabilities Act**

27.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

28.    As set forth above, Plaintiff has been discriminated against through a failure to accommodate because of his disability and was retaliated against for requesting reasonable accommodations for his disability.

29.    Defendant has violated the Americans with Disabilities Act.

30.    Defendant's violation of the Americans with Disabilities Act has directly and approximately caused damage to Plaintiff, for which he hereby sues Defendant.

## DAMAGES

19.    As a result of Defendant's discriminatory conduct, Plaintiff has suffered lost back pay, front pay, past and future loss of earning capacity, and past and future mental anguish. Plaintiff is also entitled to exemplary damage because of the nature of Defendant's conduct.

## ATTORNEY'S FEES

20.     Plaintiff has been forced to obtain counsel to represent him in this matter.  Plaintiff is entitled to reasonable attorney's fees pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §1981, and the Americans with Disabilities Act.

## CONDITIONS PRECEDENT

21.     All conditions precedent to the bringing of the present litigation, such as the filing of EEOC complaints and a notice of right to sue letter being obtained, have occurred or have been performed.  Attached as Exhibit A is the Notice of Right to File a Civil Action obtained from the EEOC.

## COURSE AND SCOPE

22.     The actions of Defendant described within this Complaint were committed by its employees and agents who in turn were acting in the course and scope of its employment.

## JURY DEMAND

23.     Plaintiff demands a trial by jury of all claims asserted in this Complaint.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that he be awarded damages, exemplary damages, attorneys' fees, pre- and post-judgment interest, and all other relief to which he is entitled.

Respectfully submitted,

___/s/ David B. Joeckel, Jr._____
David B. Joeckel, Jr.
State Bar No. 10669700

THE JOECKEL LAW OFFICE
219 South Main Street, Suite 301
Fort Worth, Texas  76104
Telephone:  (817) 924-8600
Facsimile:   (817) 924-8603
dbj@joeckellaw.com

ATTORNEY FOR PLAINTIFF

PLAINTIFF'S ORIGINAL COMPLAINT                                                              Page 10

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Dallas District Office**
207 S. Houston Street, 3rd Floor
Dallas, TX 75202
(800) 669-4000
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 05/22/2023

**To:** Victor Cullors
1336 Laguna
Grand Prairie, TX 75054

Charge No: 450-2022-04838

EEOC Representative and email:   KELLY MELTON
Investigator
kelly.melton@eeoc.gov

---

### DISMISSAL OF CHARGE

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 450-2022-04838.

On behalf of the Commission,

**Kelly Melton**
Digitally signed by
Kelly Melton
Date: 2023.05.22
16:59:24 -05'00'

for Travis M. Nicholson
District Director

**Cc:**
Michael J DePonte
Jackson Lewis P.C.
500 N AKARD ST STE 2500
Dallas, TX 75201

Suzanne Drotman
North Texas Food Bank
3677 MAPLESHADE LN
PLANO, TX 75075

Raha Assadi
Jackson Lewis P.C.
500 N AKARD ST STE 2500
Dallas, TX 75201

Ellen Flood
Jackson Lewis P.C.
500 N AKARD ST STE 2500
Dallas, TX 75201

David B Joeckel
The Joeckel Law Office
219 S Main Street, Suite #301
FORT WORTH, TX 76104


Please retain this notice for your records.